## Lewis C. Lyons v. The State.

No. 17024.   Delivered December 19, 1934.
Reported in 77 S. W. (2d) 227.

The opinion states the case.

*Butler & Price,* of Tyler, *J. P. Coon,* of Terrell, and *Wilkinson & Wilkinson,* of Mt. Vernon, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is arson; the punishment, confinement in the penitentiary for two years.

Appellant, his wife and their small children lived in a house in the city of Tyler which appellant had purchased from C. E. Smith for an expressed consideration of ten dollars in cash and the assumption by appellant of $3500 outstanding indebtedness due the United States Savings Bank, of Detroit, Michigan. Appellant had arranged for $400 insurance on his furniture. The insurance agent testified that he would have given appellant approximately $750 insurance on his furniture if he had desired it. Further, he testified that appellant told him not to transfer the insurance on the house to him. At the time of the fire the house and garage were insured in favor of C. E. Smith, appellant's grantor, in the approximate sum of $2200.

On the 15th of March, 1933, at 7:30 p. m., state's witness Briley was passing appellant's house and observed that it was on fire. Running to the house, he attempted to enter, but found that the doors were locked. Breaking through one of the doors, he entered the house, but was driven out by the smoke. Going to a nearby house, he telephoned the fire department. Trucks arrived on the scene in a few minutes and the fire was extinguished. The doors had all been locked, and at the time the firemen entered the house, the windows were locked and the screens fastened. Also the shades were drawn. There was an electric soldering iron attached to a light socket. The iron was in contact with a string of rags which went out of the room into a hallway. There was gasoline on these rags and a strong odor of gasoline about the house. According to the State's testimony, the soldering iron had ignited the rags and spread the fire to the walls of the building. In places the wall paper was burned and the wood charred. There were some gasoline containers in a closet with a small amount of gasoline in them. Rags were scattered all over the house. There were very few articles of clothing present.

Appellant testified, in substance, as follows: He bought the house from C. E. Smith and had been unable to meet the payments due the Detroit bank. No insurance on the house had been transferred to him, he having instructed the agent that he

did not desire the transfer to be made. He had applied for a policy of insurance on his furniture, but had not received it. On the day of the fire he returned home at 4:15 p. m. After he had changed his clothes he carried his wife to town and went to a radio shop. Later returning home, he found his wife and babies there. He carried from the radio shop the soldering iron found attached to the light socket by the firemen, and placed it on a settee in the living room. He expected to use the iron to repair some utensils. He at no time attached the soldering iron to the light switch. After he and his family had finished supper they went to a neighbor's house, leaving home about 7 p. m. Later he went to a radio shop, where he learned of the fire. He went immediately to his home and found that articles of clothing were missing. Appellant's wife gave testimony corroborative of appellant's version of the transaction. Appellant's neighbor testified to the visit of appellant and his family to his home prior to the fire. Appellant's wife testified that she bought gasoline on occasions for use in cleaning articles of clothing. The jars found in the closet were used by her as containers. Appellant denied that he bought gasoline shortly prior to the fire. The filling station operator testified that appellant bought a quart of gasoline on the evening before the fire.

Appellant earnestly insists that the evidence is insufficient to exclude every other reasonable hypothesis except that of his guilt. We are unable to agree with his contention.

It is recited in bill of exception No. 17 that appellant's wife testified that shortly after the fire her husband called her over the telephone and told her about the fire; that the witness was then asked by appellant's counsel to state what appellant said to her; that the State objected on the ground that the answer would be self-serving, and the court sustained the objection; that if the witness had been permitted to testify, she would have stated that appellant called her from the radio shop and told her that there had been a fire at the house, but that it only burned a little clothing and the house had not been badly damaged. Appellant contends that his statement was admissible under the rule of res gestae. The bill fails to disclose what appellant was doing after he had left the fire. We are merely informed by the bill that the statement was made shortly after the fire. We quote from Branch's Annotated Penal Code, sec. 83, as follows: "If the bill of exception fails to state the circumstances under which the declaration was made, it is not error to exclude statements of defendant made about fifteen minutes after the homicide, bill failing to show what defendant

was doing in the meantime." In support of the text, several authorities are cited, among them being Ford v. State, 50 S. W. 350. See Cavanar v. State, 269 S. W., 1053, and Hendrix v. State, 289 S. W., 38.

Bills of exception 18 and 19 deal with the same matter and will be considered together. In bill of exception No. 18 it is shown that appellant was asked on cross-examination the following question: "If Cliff Hudson didn't state to you, Mr. Lyon's (appellant) it looks mighty bad on you, and if you did not state in reply, 'I admit that it does?'" The bill is insufficient in that it fails to show the answer of the witness. In bill of exception No. 19 it is shown that Cliff Hudson testified that he asked appellant the question we have heretofore quoted and appellant answered, "I admit that it does." Appellant objected to the question on the ground that it was calculated to place before the jury the opinion of Hudson that he (appellant) was guilty. The bills are insufficient in failing to show what passed between Hudson and appellant leading up to the statements referred to. In short, the circumstances under which the conversation occurred are not disclosed by said bills. It follows that we are unable to determine whether reversible error is manifested.

Bills of exception 12 to 14, both inclusive, complain of the action of the trial court in permitting the State to introduce in evidence certain pictures made of the interior of the house after the fire. The bills merely embrace the grounds of objection to the introduction of the pictures. The practice is that when a ruling of the trial court upon the receipt or exclusion of evidence is attacked upon appeal, the correctness of the ruling will be presumed in the absence of a showing in the bill of exception to the contrary. Cavanar v. State, 269 S. W., 1053. The presumption in favor of the correctness of the ruling is not overcome by a mere recital in the bill of the grounds assigned for opposing the ruling. Cavanar v. State, supra. Under the circumstances, we are unable to appraise the bills.

We have not undertaken to discuss all of the bills of exception found in the record. However, a careful examination of all of appellant's contentions leads us to the conclusion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.